IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GENE E. DUDLEY, SR.,                )
                                    )
                  Plaintiff,        )
                                    )
        v.                          )        Case No. 09-2027-JWL
                                    )
NORTH CENTRAL REGIONAL OFFICE,      )
et. al.                             )
                                    )
                  Defendants.       )
                                    )
_____ )

## MEMORANDUM AND ORDER

Plaintiff Gene E. Dudley Sr., appearing *pro se*, alleges that he was wrongfully

made to incur certain medical expenses while participating in a federal residential re-

entry program at Kansas City Community Center ("KCCC"), that he was injured when

the defendants delayed the delivery to him of certain legal mail, that he was intentionally

and improperly hindered in his attempt to exhaust certain administrative remedies for

grievances he held, and that he was denied due process of law in connection with a

grievance he filed with the Bureau of Prisons.[1]   The matter is presently before the Court

_____

[1] Plaintiff asserted different claims in the first complaint filed (doc. #1), an amended
complaint (doc. #17), and a supplement to the amended complaint (doc. #30).  In the
amended complaint, plaintiff stated that he sought to amend the original complaint by
adding to the claims contained therein.  This Court will therefore consider, for purposes
of resolving this motion, all of plaintiff's claims in the original complaint, the amended
complaint, and the supplement, keeping in mind that this Court must construe a pro se
litigant's pleadings "liberally."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)
(*citing Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L.E.2d 652 (1972)).

on the motion by defendants Federal Bureau of Prisons' North Central Regional Office (NCRO), NCRO Contract Oversight Specialist Van Racy, and NCRO Regional Director Michael K. Nalley (collectively "defendants") to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, or alternatively for summary judgment. (Doc. # 48). For the reasons set forth below, the Court addresses defendants' motion as one for summary judgment, grants the motion, and dismisses plaintiff's claims against defendants.[2]

## I. **Factual Background**[3]

Following his incarceration at a federal prison, plaintiff participated in a federal residential re-entry center program at Kansas City Community Center ("KCCC"). The program seeks to assist federal offenders with issues relating to their re-entry into society after imprisonment. The program is operated pursuant to a contract the Bureau of Prisons awarded to KCCC, a Missouri not-for-profit corporation. Under the contract, the Bureau of Prisons, as "Contracting Officer," designated the NCRO as its "Technical Representative." The NCRO worked with KCCC in this representative capacity during the time plaintiff resided at KCCC.

---

[2] As both parties provide and rely upon information outside of the pleadings, the Court considers the defendants arguments consistent with their alternative request that the motion be treated as one for summary judgment. See *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001), *rev'd on other grounds*, 537 U.S. 79 (2002) (concluding that if the court on a Rule 12(b)(6) motion looks to matters outside the complaint, the court generally must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment).

[3] In accordance with the applicable summary judgment standard, the following facts are either uncontroverted or related in the light most favorable to plaintiff.

Before transferring to KCCC's facilities, plaintiff signed an agreement with the Bureau of Prisons expressing his understanding that he would be expected to assume financial responsibility for his own health care during his time at KCCC.[4] While plaintiff participated in the program, he resided at KCCC's facilities in Kansas City, Missouri. While at KCCC, he received medical care from Truman Medical Center, a healthcare facility located in Kansas City, Missouri. Plaintiff alleges that he was wrongfully forced to incur costs for the medical care he received while at KCCC, including a fee for ambulance transportation. He claims that the imposition of such costs upon participants in re-entry center programs violates federal law, including the Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657 (2008).

---

[4] The "Community Based Program Agreement" stated the following:

> I understand that I am expected to assume financial responsibility for my health care while a resident of a community-based correctional program. Should I be unable or unwilling to bear the cost of necessary medical care I understand that I may be transferred to a suitable institution or facility, at the Governments option, to receive such care. I understand that no medical care may be provided to me at Government expense without prior authorization of the Bureau of Prisons.

(Doc. # 49-3 at 3).

Initially, plaintiff asserted that he entered into an agreement with the Bureau of prisons providing for continued medical coverage while participating in the program at KCCC and that federal law requires the provision of such medical care at no cost to him. (Doc. #1 at 1). However, plaintiff did not point out for the Court any language within the Community Based Program Agreement—or any other agreement—providing that he would receive continued medical coverage while participating in the program at KCCC. Plaintiff conceded that he signed an agreement with the Bureau of Prisons providing that he would be expected to assume his own medical expenses while at KCCC, but contends that the agreement violated federal law—specifically, the Second Chance Act. For example, plaintiff stated specifically that the Second Chance Act "creates a remaining genuine issue of material fact" regarding "the validity and effectiveness" of the Community Based Program Agreement. (Doc. #51 at 4).

While participating in the program at KCCC, plaintiff received mail from the United States District Court for the Eastern District of Michigan regarding a separate lawsuit plaintiff had filed, informing him of deficiencies needing to be corrected to avoid dismissal of the action. According to plaintiff, the letter was received by the North Central Regional Office, forwarded to KCCC, and then given to plaintiff. Plaintiff alleges that the defendants delayed delivery of the mail and that he was harmed by the delay because the lawsuit was dismissed as a result. Plaintiff filed a motion with the District Court for the Eastern District of Michigan requesting that it set aside its order dismissing the action, on the grounds that he had not received the letter until after the action had already been dismissed. However, the court concluded that the fault lay with plaintiff and denied his motion.

Plaintiff additionally contends that the Bureau of Prison's North Central Regional Office in Kansas City, Kansas and its Office of General Counsel in Washington D.C. hindered or delayed his attempts to exhaust administrative remedies in connection with a separately filed action in the United States District Court for the District of South Dakota regarding the Bureau of Prison's allegedly negligent treatment of injuries plaintiff received during in inmate softball game. He contends that the offices "created a sham and artifice" to make it appear that plaintiff had sufficiently exhausted his remedies under the Federal Tort Claims Act, when they had in fact not been exhausted.[5]

_____

[5] The plaintiff alleges these facts in the supplement to his amended complaint (doc # 30). It is unclear from the supplement precisely what plaintiff's grievances relate to. However, in a supporting memorandum, defendants assumed plaintiff referred to a lawsuit plaintiff filed in the United States District Court for the District of South Dakota

Plaintiff also asserts that the NCRO and the Office of General Counsel in Washington, D.C. improperly rejected a grievance he filed, because the rejection did not explain the reason for denial of the grievance and additionally failed to contain a notice of receipt or response time. Plaintiff contends the failure of the NCRO or the Office of General Counsel to provide him a proper rejection constituted a denial of due process.

## II. Procedural History

Plaintiff initiated this action in January 2009, alleging that the defendants improperly detained certain mail addressed to plaintiff from the United States District Court for the Eastern District of Michigan. (Doc. #1). In April, plaintiff filed an amended complaint setting forth his claim that the Bureau of Prisons and KCCC failed to provide him free medical care during his time at KCCC, in alleged violation of federal law. (Doc. #17). In June, plaintiff filed an additional supplement to his complaint, alleging that the North Central Regional Office and the Office of General Counsel in Washington, D.C. prevented him from exhausting administrative remedies with respect to separate grievances. (Doc. #30). In July, two of the defendants in the action—KCCC and the Executive Director of Residential Programs for KCCC, Mr. Charles Megerman, filed a Motion to Dismiss, alleging that the Court lacked personal jurisdiction over them. (Doc. #33). The Court granted their motion on September 8, 2009, and the action

on March 4, 2009. (Doc. #49 at 23). As plaintiff did not contest this in his reply, the Court accepts as uncontested that plaintiff's claim does refer to the action initiated in South Dakota.

continued as against the remaining defendants, who filed the present Motion to Dismiss or, in the Alternative, for Summary Judgment. However, before the Court could rule on the present motion, plaintiff moved the Court to set a scheduling conference. (Doc. #52). Defendants responded by requesting that the Court issue an order delaying the planning, scheduling and discovery of the case on the grounds that a ruling from the Court on the present motion would potentially dispose of the entire case and that staying discovery would therefore prevent the parties from spending resources unnecessarily. (Doc. #54). The defendants also filed a response to plaintiff's motion to set a scheduling conference, opposing plaintiff's motion on the same basis. (Doc. #55). These motions are all currently pending before the Court.

### III. Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

The court also notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1). However, where a plaintiff is proceeding pro se, the Court must construe his pleadings liberally and hold the plaintiff to a less stringent standard than that which is applicable to formal pleadings drafted by lawyers. *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001); *accord Shaffer v. Saffle*, 148 F.3d 1180, 1181 (10th Cir. 1998)

(quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  Yet the liberal construction of the plaintiff's complaint "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).  The Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

## III.  Discussion

Defendants move to dismiss plaintiff's action for failure to state a claim upon which relief may be granted or, alternatively, for summary judgment.  In light of its obligation to liberally construe plaintiff's pro se complaint, the Court concludes that plaintiff seeks monetary, declaratory and injunctive relief for the following allegedly wrongful acts: (1) the failure of either KCCC or the Bureau of Prisons, including its North Central Regional Office, to pay for certain medical bills plaintiff incurred while participating in the residential re-entry center program at KCCC, purportedly in violation of federal law (2) the intentional censorship and delay of plaintiff's mail, which purportedly caused the dismissal of a lawsuit plaintiff had filed in the United States District Court for the Eastern District of Michigan, (3) the intentional actions of officials at the NCRO to prevent plaintiff from successfully exhausting his administrative remedies with respect to a claim under the Federal Tort Claims Act he filed in the United States District Court for the District of South Dakota, and (4) the failure of the NCRO or Office of General Counsel for the Bureau of Prisons to properly respond to plaintiff's

filed grievances, because the rejection notice plaintiff received failed to state a reason for the rejection and because plaintiff was not provided with a "notice of receipt" with a date and response time.  The Court addresses each claim below.

A.  Allegations Regarding the Payment of Medical Bills

Plaintiff asserts that federal law requires the Bureau of Prisons or a Residential Reentry Center (RRC), such as KCCC, to ensure that those participating in federal re-entry programs receive medical care free of charge.  Plaintiff alleges that he personally incurred costs for medical care he received while residing at KCCC, including a fee for ambulance transportation and costs associated with dental and optometry care.  (Doc. #17 at 2-3).  For example, plaintiff contends that KCCC policy required his use of an ambulance when he sought medical treatment and that he should not have been forced to incur such costs.  He asserts the right to bring a claim for this wrongful imposition of medical costs under various federal statutes, including 42 U.S.C. § 1981, 42 U.S.C. § 1982, 18 U.S.C. § 4041-44, and the Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657 (2008).  The Court first assesses plaintiff's claims under 42 U.S.C. § 1981-82, and 18 U.S.C. § 4041-44, concluding either that the statutory provisions address matters irrelevant to plaintiff's claims or that plaintiff failed to plead sufficient facts to survive summary judgment.  The Court then discusses plaintiff's claim that the failure of the Bureau of Prisons to pay his medical bills violated the Second Chance Act of 2007, concluding plaintiff's allegations are insufficient to survive defendant's properly supported motion for summary judgment.

*1. Section 1981*

42 U.S.C. § 1981addresses racial discrimination in contractual relationships. As amended by the Civil Rights Act of 1991, the statute provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a). By its language, then, § 1981 establishes four protected interests: (1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments. See *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989). Plaintiff has not clearly asserted that defendants deprived him of any of these rights. In his amended complaint, plaintiff stated:

> "Plaintiff enjoys the rights to create and enforce an agreement just as any other American. Plaintiff is Black and suppose that Defendants are White. Plaintiff entered into an agreement and signed documentation provided by Bureau of Prisons (BOP) that continuing medical coverage would be available while confined in KCCC/RRC. The agreement regarding medical care…stems from the Second Chance Act. As alleged Defendants whether individually or collectively breach that agreement." (Doc. # 17 at 1).

Even if this Court construed plaintiff's amended complaint as asserting a claim that he was denied the right to make and enforce contracts, plaintiff failed to set forth any facts indicating the existence of such a contract with the Bureau of Prisons or any facts

suggesting that defendants intentionally discriminated against plaintiff on the basis of race. See *Reynolds v. School Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1532 (10th Cir. 1995) (noting that to establish a claim under § 1981, the plaintiff must establish that the defendants "intentionally or purposefully discriminated" against the plaintiff) (citing *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982).

*2. Section 1982*

42 U.S.C. § 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Plaintiff, however, provided no factual support for the proposition that he was denied by the government the same right to inherit, purchase, lease, sell, hold or convey real or personal property as enjoyed by white citizens. His unfounded allegation that "Plaintiff is black and suppose that Defendants are white" is insufficient to establish that he suffered intentional racial discrimination, a necessary element of a claim under § 1982. See *Ashbury v. Brougham*, 866 F.2d 1276, 1279 (10th Cir. 1989) (noting that to prevail on a claim under § 1982, the Plaintiff must "prove a discriminatory intent") (citing *Denny v. Hutchinson Sales Corp.*, 649 F.2d 816, 822 (10th Cir. 1981), *superseded by statute on other grounds as recognized in Home Quest Mortg. LLC v. American Family Mut. Ins. Co.*, 340 F.Supp.2d 1177, 1183 n. 2 (D. Kan. 2004).

3. *18 U.S.C. § 4040-4044*

Plaintiff also asserts a cause of action under 18 U.S.C. § 4040-4044. 18 U.S.C. § 4040 does not exist. 18 U.S.C. § 4041 describes the relationship between the Bureau of Prisons and the Attorney General and therefore does not provide plaintiff any cause of action.[6] Likewise, 18 U.S.C. § 4043-44 addresses when and how the Attorney General may accept certain gifts or bequests and is therefore inapplicable to plaintiff's claims.[7] 18 U.S.C. § 4042 sets forth the general duties of the Bureau of Prisons, including the establishment of reentry planning procedures and notification of the release of prisoners. The only seemingly applicable provision, § 4042(a)(2), states that the Bureau of Prisons shall "provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States…" *In United States v. Muniz*, the Supreme Court held that a cause of action existed under the FTCA for breach of the duty imposed by 18 U.S.C. § 4042. *Logue v. United States*, 412 U.S. 521, 528-29 (1973) (citing *United States v. Muniz*, 374 U.S. 150 (1963)). However, even if plaintiff could establish a breach of duty under § 4042, plaintiff could pursue such an action only

---

[6] § 4041 provides that "[t]he Bureau of Prisons shall be in charge of a director appointed by and serving directly under the Attorney General. The Attorney General may appoint such additional officers and employees as he deems necessary."

[7] § 4043 states "[t]he Attorney General may accept gifts or bequests of money for credit to the "Commissary Funds, Federal Prisons." A gift or bequest under this section is a gift or bequest to or for the use of the United States under the Internal Revenue Code of 1986 (26 U.S.C. 1 et seq.). § 4044 states [t]he Attorney General may, in accordance with rules prescribed by the Attorney General, accept in the name of the Department of Justice any form of devise, bequest, gift or donation of money or property for use by the Bureau of Prisons or Federal Prison Industries. The Attorney General may take all appropriate steps to secure possession of such property and may sell, assign, transfer, or convey such property other than money."

pursuant to the FTCA. *Thomas v. United States Bureau of Prisons*, 2007 WL 2788650, at * 11 (D. Colo. Sept. 11, 2007) (unpublished opinion), *aff'd*, 282 Fed. Appx. 701 (10th Cir. June 24, 2008) (unpublished opinion) (citing *Harper v. Williford*, 96 F.3d 1526, 1527-28 (D.C. Cir. 1996), *Williams v. United States*, 405 F.2d 951, 954 (9th Cir. 1969), and *Gibson v. Matthews*, 715 F.Supp. 181, 189-90 (E.D. Ky. 1989)). In other words, the remedy for a violation of § 4042 is an action against the United States under the FTCA. However, to bring an action under the FTCA, plaintiff must exhaust administrative remedies, 28 U.S.C. § 2671(a), and the Court concludes plaintiff has failed to satisfy his burden to come forward with evidence establishing his exhaustion of administrative remedies. Defendants alleged in their statement of material facts and provided evidence in support of their motion that plaintiff had not filed any administrative tort claims concerning the payment of his medical bills. (Doc. #49-15 at 1). Plaintiff did not contest this evidence and the Court therefore accepts its truth. See D. Kan. R. 56.1(a) ("[a]ll material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."). Therefore, plaintiff has failed to demonstrate that he has satisfied the exhaustion prerequisite to bringing a claim under the FTCA and the Court must grant summary judgment in favor of defendants on his claim under 18 U.S.C. § 4042.

*4. The Second Chance Act*

Plaintiff additionally asserts that the Second Chance Act of 2007, Pub. L. No. 110-199, 122 Stat. 657 (2008), requires the Bureau of Prisons or RRC to pay for the medical

care of individuals such as himself who are participating in federal residential re-entry center programs. Prior to his transfer to KCCC, plaintiff signed an agreement with the Bureau of Prisons, pursuant to which he assumed financial responsibility for the health care provided him while at KCCC. (Doc. #49-3 at 1, 3). However, plaintiff alleges that this agreement was invalid under the Second Chance Act of 2007, which provides: "[i]n order to ensure a minimum standard of health and habitability, the Bureau of Prisons should ensure that each prisoner in a community confinement facility has access to necessary medical care, mental health care, and medicine through partnerships with local health service providers and transition planning." Pub. L. No. 110-199, § (g)(1), 122 Stat. 657 (2008). Alleging that all defendants breached their obligations under this federal law, plaintiff seeks monetary and declaratory relief, as well as the restoration of his credit, which he contends has been damaged by the existence of the unpaid medical bills. He also seeks injunctive relief in that he requests that the outstanding bills be paid by defendants.

In response, the defendants contend (1) plaintiff failed to allege facts establishing that either Mr. Racy or Mr. Nalley were personally involved in any matter concerning the payment of plaintiff's medical bills, (2) plaintiff cannot establish an entitlement to declaratory or injunctive relief because he failed to demonstrate a likelihood of future injury, and (3) plaintiff cannot in any event state a claim for relief because there was no contract between plaintiff and the NCRO that would permit plaintiff to recover damages for this claim, and the Bureau of Prisons already paid the outstanding medical bills on behalf of plaintiff.

The defendants presented uncontested evidence regarding the payment of these bills in the form of a declaration under penalty of perjury from Mr. Eric Jackson, the Community Corrections Manager (CCM) for the North Central Regional Office.[8] (Doc. #49-4 at 1). Mr. Jackson stated that he had no knowledge at the time plaintiff initiated the lawsuit of any medical care provided to plaintiff. Under an agreement between the Bureau of Prisons and KCCC, medical bills for both emergency and non-emergency care were to have been submitted by KCCC to the Bureau of Prisons for consideration of payment. After the plaintiff initiated the present action, Mr. Jackson inquired into whether any outstanding bills existed and discovered a bill on file at Truman Medical Center.[9] (Doc. #49-4 at 1). The Bureau of Prisons paid the bill in full on September 15, 2009. Mr. Jackson had knowledge of another bill for ambulance services that KCCC had, which Mr. Jackson believed KCCC was paying.

On October 9, 2009, the defendants filed a reply to plaintiff's response, this time attaching a newly updated declaration of Mr. Jackson. Mr. Jackson here stated that he had contacted KCCC to verify whether it had paid plaintiff's ambulance bill and discovered that KCCC had not paid it. (Doc. #53-1 at 1). Mr. Jackson then asked KCCC to send it to the Bureau of Prisons to begin the process for its payment by the Bureau of

---

[8] Plaintiff did not contest these matters in his response. Therefore, the Court accepts them as true pursuant to D. Kan. 56.1(a).

[9] The defendants allege that the bill had not properly been forwarded on to it for consideration of payment. They stated "it is not the duty of the BOP, but rather, the contractual duty of the RRC to initially process any such medical bills and then present them to the BOP for reimbursement." (Doc. #49 at 22).

Prisons.[10]  As plaintiff had an opportunity to seek leave to file a surreply to contest these

allegations, and plaintiff did not do so, the Court accepts the truth of these additional

statements as well.  See D. Kan. R. 56.1(a).

The NCRO asserts that plaintiff has "failed to show that he is entitled to monetary

or equitable relief for nonpayment of medical bills," because the bills have already been

paid or are in the process of being paid by the Bureau of Prisons.  The Court agrees that

the payment of plaintiff's medical bills renders moot plaintiff's request that such bills be

paid by defendants.[11]  See *Greater Yellowstone Coalition v. Tidwell*, 572 F.3d 1115, 1121

(10th Cir. 2009) (holding a request for injunctive relief moot when the government

undertook the environmental analyses plaintiff sought to order undertaken).  However, if

the Bureau of Prisons had improperly failed to pay plaintiff's medical bills in violation of

his federal rights, plaintiff's claim for damages would not be mooted by the Bureau's

payment of his bills after the initiation of litigation.  See *Moseley v. Bd. Of Educ. Of*

---

[10] The allegations regarding the Bureau of Prison's payment of the ambulance bill are contained within the defendants' reply to plaintiff's response to the motion.  They were contained in the declaration of Mr. Jackson, who said that he would "begin the process for payment of the bill by the BOP."  However, the Court is unaware of any payment actually made by the Bureau of Prisons at the present time.

[11]  There is an exception to the doctrine of mootness for when the defendant voluntarily ceases the challenged practice or action.  The exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."  *Greater Yellowstone Coalition v. Tidwell*, 572 F.3d 1115, 1121 (10th Cir. 2009) (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1 (2001).  Therefore, a case will not be rendered moot by a voluntary cessation of the challenged act "unless there is no reasonable expectation the wrong will be repeated."  *Id.* (citing *Longstreth v. Maynard*, 961 F.2d 895, 900 (10th Cir. 1992)).  Plaintiff did not contend that the voluntary cessation principle would apply, but the Court nonetheless notes that once the bills incurred during plaintiff's stay at KCCC have been paid in full, it would be impossible for defendants to return to their allegedly wrongful behavior by refusing to pay plaintiff's medical bills.

*Albuquerque Public Schools*, 483 F.3d 689, 693 (10th Cir. 2007) (citing *Taxpayers for Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.*, 739 F.2d 1472, 1479 (10th Cir. 1984) for the proposition that claims for past damages by definition cannot be moot). Indeed, plaintiff contends that he suffered additional damages from the failure of defendants to pay his bills, because he alleges that his treatments were discontinued due to the unpaid medical bills and that this harmed him because he needed continuing treatment. He also claims he was harmed by the existence of unpaid medical bills that damaged his credit and by his need for additional dental and eye care that he could not receive because of his damaged credit rating. Therefore, the Court finds that plaintiff's claims for damages were not rendered moot by the Bureau's payment of the bills.

The Court also notes that plaintiff did attach as exhibits letters and a grievance form, indicating the BOP might have received notice of the outstanding bills and therefore was not ignorant of the harm plaintiff suffered. In particular, plaintiff provided an offender grievance form dated September 11, 2008 that appeared to have been filled out by plaintiff, complaining of KCCC's policy of calling an ambulance for transport even in a non-emergency situation. (Doc. #51-1 at 36). The grievance form was not signed and did not otherwise contain any indication it had been received by Bureau of Prisons personnel. Plaintiff also attached a letter written to the "Medical Administrator" at "Bureau of Prisons, NCRO" in Kansas City, Kansas, dated October 21, 2008, that set forth his complaint regarding the forced payment of medical bills, including his belief

that the Second Chance Act required the payment of the medical bills.[12]  Finally, plaintiff

attached a letter dated January 13, 2009, written to the "General Counselor" at the Bureau

of Prisons in Washington, D.C. complaining about the ambulance bill he was forced to

incur and stating that KCCC/RRC had not yet paid the outstanding bill.  (Doc. #51-1 at

56).

However, these exhibits offered by plaintiff in opposition to dismissal or summary

judgment were not supported by affidavit or deposition testimony as required under Fed.

R. Civ. P. 56(c) and D. Kan. Rule 56.1(d).  Defendants argue that the unauthenticated

evidence presented by plaintiff refers only to "unspecified" grievances and is insufficient

to refute the sworn testimony presented by defendants concerning "the presentation of

medical bills to the BOP."  (Doc. #53 at 5).  The Court agrees that plaintiff did not

present sufficient, authenticated evidence to survive summary judgment.

Defendants alleged in their statement of facts and attached to the original

memorandum supporting their motion the following properly supported evidence.  As

---

[12] The letter stated as follows:

> "Dear Medical Administrator: I am addressing my concerns to you about who is responsible for medical services and their subsequent billings and costs.  I recently filed an administrative remedy and was told that forcing inmates to pay the cost of being transported by ambulance is no longer being tolerated, however, my grievance has not been returned per policy.  My major concern is your written response and some indication in writing that ambulance bill will be paid for by agency and all other medical bills incurred while I am paying subsistence at KCCC/RRC and while on supervision under BOP will is BOP's burden as cited in the public law and the Second Chance Act.  Your cooperation is warranted and will be appreciated.  Sincerely, G. E. Dudley."

(Doc. # 51-1 at 52).

plaintiff did not contest the following matters in his subsequent response, the Court accepts their truth. See D. Kan. R. 56.1(a) ("[a]ll material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."). First, medical care for program participants at KCCC was to be provided pursuant to an agreement between the Bureau of Prisons and KCCC entitled a "Statement of Work." The "Statement of Work" provided that KCCC would receive pre-approval of all healthcare treatments to be provided from the CCM, except in cases of emergency. In addition, KCCC would determine whether the individual had insurance or other means to pay for the medical treatment, and would "make every effort to obtain no-cost healthcare treatment for the [program participant] through local social service agencies." (Doc. #49-3 at 4). In addition, KCCC would "compensate the healthcare provider for treatment of services," and then forward the invoice for the healthcare services to the CCM. (Doc. #49-3 at 5). The CCM would in turn submit the invoice through the Regional Management Team to the Regional Health Service Administrator, for approval and repayment to KCCC. If a program participant needed emergency care, would not be covered by insurance and could not afford treatment, KCCC would pay the healthcare provider directly and submit the invoice to the CCM. The Bureau of Prisons assumed the responsibility to reimburse KCCC for all emergency medical treatments. (Doc. #49-3 at 5).

Therefore, the defendants presented uncontested evidence that KCCC agreed with the Bureau of Prisons to submit bills for plaintiff's medical care to the CCM, Mr. Eric Jackson. As discussed above, the defendants also presented uncontested evidence that

Mr. Jackson had no knowledge of such bills prior to the initiation of the present lawsuit. Plaintiff did not respond by submitting authenticated evidence to raise a genuine issue of fact regarding the state of the Bureau of Prison's knowledge of the outstanding medical bills. Therefore, plaintiff did not meet his burden to set forth facts demonstrating a genuine issue of material fact in regards to whether the Bureau of Prisons, including the NCRO, could be held liable for failing to pay plaintiff's medical bills prior to the initiation of this action. See Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported…an adverse party may not rest upon the mere allegations [in his pleadings], but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). Therefore, defendants are entitled to judgment as a matter of law on the issue of plaintiff's medical bills.[13]

B. Allegations Regarding the Delay of Mail

Plaintiff additionally alleges defendants intentionally and improperly delayed the delivery to him of certain mail from the United States District Court for the Eastern District of Michigan regarding a separate lawsuit plaintiff had filed, causing the dismissal of the lawsuit. According to plaintiff, the letter was received by the North Central Regional Office, forwarded to KCCC, and eventually given to plaintiff. Dated October 6, 2008, the letter notified plaintiff of deficiencies in his filing of a complaint in the Eastern

---

[13] The Court does not speak to whether plaintiff might have a claim against any others for the failure to pay or properly process his medical bills. The Court merely concludes that plaintiff has failed to satisfy his burden of proof with regard to the present defendants.

District of Michigan, deficiencies which would result in dismissal of the lawsuit if not rectified within thirty days of October 6.[14] (Doc. # 49-6 at 1). According to plaintiff, he received the letter on December 29, 2008 from a KCCC staff member. As he had not responded to the letter, the District Court for the Eastern District of Michigan dismissed his complaint without prejudice on November 20, 2008. (Doc. #49-7 at 1-2). He filed a Motion to Amend or Set Aside Order for Good Cause Shown on January 6, 2009, requesting that the District Court for the Eastern District of Michigan amend or set aside its order dismissing the action, arguing that the mail had not been forwarded to him at his correct address and that he had therefore not received the letter until December 29th. (Doc. #49-8 at 1). He also contended that KCCC was "not responsible for delivering mail once Plaintiff has submitted his change in address." (Doc. #49-8 at 2). The District Court for the Eastern District of Michigan denied his request on January 9, 2009, noting that (1) he had been obligated to notify the court of his current residence and failed to do so, and (2) he failed to comply with filing requirements in the first instance. (Doc. #49-9 at 1-2).

Plaintiff failed to clearly identify the causes of action he asserts for the alleged failure of defendants, apparently including the NCRO, Mr. Racy and Mr. Nalley,[15] to

---

[14] According to the letter, plaintiff failed to either submit a required $350 filing fee or an application to proceed without prepayment of the costs and fees for the action.

[15] Plaintiff failed to specify which defendants he believed were responsible for the delay in delivery of the mail. In the Complaint, plaintiff stated that the "[d]efendants acting in their individual and/or official capacities" deliberately delayed receipt of his mail. (Doc. #1 at 2). However, plaintiff had also sued KCCC, the claims against whom were subsequently dismissed for lack of personal jurisdiction. (Doc. # 50 at 16). Plaintiff

timely forward to him this mail.  However, in his original Complaint, where he raised this issue, he stated that his claim involved the due process procedures utilized by the Bureau of Prisons "involving access to the courts according to federal statutes and [the] U.S. Constitution['s] First and Fifth Amendments."  (Doc. #1 at 1)  Plaintiff additionally contends that the delayed mail had been opened and its contents read, with such censorship causing the delay.[16]  (Doc. #1 at 2).  Giving the necessary liberal construction to plaintiff's allegations, the Court concludes plaintiff attempts to assert the following claims for the delay of his mail (1) that the censorship and detention of his mail violated the First Amendment (2) that he was deprived of procedural due process in connection with the seizure and detention of his mail and (3) that the detention of his mail deprived him of access to the courts, in violation of his due process rights.  Plaintiff seeks monetary and injunctive relief for this claim.  (Doc. #1 at 3).

---

provided no evidence indicating that the NCRO, Mr. Racy or Mr. Nalley were responsible for the mail delay, rather than officials at KCCC.

[16] The handbook for the KCCC facility actually notified participants that mail could be opened and censored.  Specifically, it stated as follows:

> If it poses no threat to the safety and security of the facility or others, clients will be permitted uncensored correspondence.  Client mail, incoming and outgoing, may be opened and inspected for contraband.  When based on interests of order and security, mail may be read or rejected.  When a client's mail is opened by staff and the content deemed to be inappropriate to the rules and regulations of the facility or to contain contraband, the client will be notified in writing of the actions taken and the reasons for confiscation of the mail or return of the mail to the sender.

(Doc. #51-1 at 49).

Defendants respond that plaintiff cannot successfully assert his claim regarding their alleged delay of his legal mail for the following reasons: (1) sovereign immunity bars his claims for damages asserted against the NCRO, a federal agency, as well as those asserted against Mr. Racy and Mr. Nalley in their official capacities; (2) qualified immunity protects Mr. Racy and Mr. Nalley from Plaintiff's damages claims against them in their individual capacities; (3) although not barred by immunity, plaintiff's request for injunctive relief fails because he cannot establish a substantial likelihood of future injury; (4) his claim fails on the merits because he could demonstrate neither who actually delayed the mail nor any injury from the delay; and (5) collateral estoppel bars his claims for delay of the mail because the United States District Court for the Eastern District of Michigan already considered his arguments on this matter and nonetheless decided not to reverse its order dismissing his lawsuit.

In his response to defendant's motion to dismiss or, in the alternative, for summary judgment, plaintiff stated that the letter from the District Court had been "addressed to NCRO," to "CCM KCCC Office." He also stated that the letters he received had been opened and that the delay in getting his mail caused the dismissal of his claim and frustrated his access to the court. (Doc. #51 at 6-7). Plaintiff asserts that the NCRO received his mail (doc. #51 at 9), attaching as an exhibit an envelope from the United States District Court for the Eastern District of Michigan, addressed to "CCM Kansas City Community Corrections Office."[17] However, plaintiff has not otherwise presented any evidence to establish that employees at the NCRO detained his mail, rather

---

[17] The envelope listed the address for the NCRO in Kansas City, Kansas.

than the staff at KCCC or employees of the United States Postal Service.  Instead, plaintiff contends that additional discovery, such as further inquiry into KCCC's receipt and delivery of mail, would establish that the NCRO received his mail.  (Doc. # 51 at 9).  The defendants did allege in their statement of facts and did present uncontested evidence that Mr. Racy and Mr. Nalley are not responsible for processing inmate mail and that they are not personally aware of any mail received by the NCRO addressed to plaintiff.  (Doc. #49-3 at 1 (declaration of Van Racy) and Doc. #49-14 at 1 (declaration of Michael K. Nalley)).  As for whether the NCRO received any such mail, defendants state that "[t]he Bureau of Prisons cannot speak to any particular piece of mail that may have been mis-directed to its facility nearly one year ago and neither can [p]laintiff."  (Doc. #49 at 14).  The Court will first address plaintiff's allegations with regard to defendant NCRO, and will then analyze his claims against defendants Mr. Racy and Mr. Nalley.

1.  Claims Asserted Against the North Central Regional Office

Liberally construing plaintiff's allegations and viewing the facts in a light most favorable to plaintiff as the non-moving party, the Court finds plaintiff's claims against the North Central Regional Office barred by the doctrine of sovereign immunity.  The doctrine of sovereign immunity shields the United States, and all of its agencies, from suit, absent a Congressional waiver of immunity.[18]  *Harrell v. U.S.*, 443 F.3d 1231, 1234

---

[18] As the Tenth Circuit has explained, "[t]he United States consents to be sued only when Congress unequivocally expresses in statutory text its intention to waive the United States' sovereign immunity."  *United States v. Richman (In re Talbot)*, 124 F.3d 1201, 1206 (10th Cir. 1997).

(10th Cir. 2006).  Therefore, a claim may be brought against the United States or one of

its agencies only if there is an identifiable, unequivocal statutory waiver of sovereign

immunity for that particular type of claim.  *Fent v. Oklahoma Water Resources Bd.*, 235

F.3d 553, 556 (10th Cir. 2000).  As the type of relief sought impacts the analysis of

sovereign immunity and waiver, the Court considers whether plaintiff can successfully

assert his claims based upon the type of relief sought.


Plaintiff's Claims for Monetary Damages

Plaintiff contends that the defendants intentionally censored and delayed delivery

of his mail in violation of his constitutional rights, including his rights under the First

Amendment and the Due Process Clause of the Fifth Amendment.  Plaintiff made no

showing that the United States has waived its sovereign immunity and did not contest the

defendants' assertion of sovereign immunity.  Nevertheless, the Court considers the

plausible causes of action, based upon plaintiff's allegations, and the applicability of

sovereign immunity with each.

Plaintiff's allegations could be construed as an assertion of a claim pursuant to

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388

(1971).  A *Bivens* action would permit plaintiff to recover money damages from federal

officials who, acting in their individual capacities, violated his constitutional rights.  See

*Farmer v. Perrill*, 288 F.3d 1254, 1256 (10th Cir. 2002).  However, "*Bivens* actions lie

only against federal actors in their individual capacities, not in their official capacities

and not against the federal agencies for which they work."  *Punchard v. U.S. Bureau of*

*Land Management*, 180 Fed.Appx. 817, 819 (10th Cir. 2006) (unpublished opinion) (citing *Steele v. Fed. Bur. of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)). The doctrine of sovereign immunity bars *Bivens* claims against federal agencies. *Greenlee v. U.S. Postal Service*, 247 Fed.Appx. 953, 955 (10th Cir. Sept. 7, 2007) (unpublished opinion) (citing *FDIC v. Meyer*, 510 U.S. 471, 484-85 (1994)). See also *Elrod v. Swanson*, 478 F.Supp.2d 1252, 1270 (D. Kan. 2007). Therefore, plaintiff cannot assert his constitutional claims against the Bureau of Prison's North Central Regional Office if construed as *Bivens* claims.

In addition, plaintiff might attempt to assert a claim pursuant to the Federal Tort Claims Act, but has failed to set forth sufficient factual allegations to survive summary judgment on such a claim. The Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq*., waives sovereign immunity for tort claims brought against the United States.[19] § 2674. As the Tenth Circuit has recognized, the FTCA "generally waives the United States' sovereign immunity with respect to claims for money damages arising out of loss of property resulting from federal employee misconduct." *Georgacarakos v. United States*, 420 F.3d 1185, 1186 (10th Cir. 2005). However, the defendants alleged in their statement of facts and presented uncontested evidence that plaintiff has not exhausted all administrative remedies for this claim, as required before bringing a claim for monetary damage under the Act. (Doc. # 49 at 7 and #49-15 at 1). See also 28 U.S.C. § 2675(a) (requiring exhaustion of administrative remedies). Therefore, the Court accepts as true

---

[19] In an FTCA action, "[t]he United States is the only proper defendant." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 n. 4 (10th Cir. 2001).

that plaintiff did not exhaust administrative remedies with regard to his claims for detention of his mail. See D. Kan. R. 56.1(a). In addition, the FTCA explicitly excludes any claim arising from the "loss, miscarriage, or negligent transmission of letters or postal matter" and plaintiff's claim is therefore be barred by sovereign immunity. 28 U.S.C. § 2680(b) (2006); *Georgacarakos v. United States*, 420 F.3d at 1186. As a result, the Court grants summary judgment in favor of defendants on this issue.

*Plaintiff's Claims for Injunctive Relief*

Plaintiff's claims against the United States for injunctive relief are not barred by the doctrine of sovereign immunity, however. In many circumstances, the Administrative Procedure Act (APA) waives the sovereign immunity for the United States for claims "seeking relief other than money damages" against the Bureau of Prisons. 5 U.S.C. § 702; *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005). Nonetheless, plaintiff cannot survive summary judgment because plaintiff has failed to set forth sufficient facts to demonstrate a substantial likelihood of future injury. See *Hall v. Chester*, 2008 WL 4657279, at *4 (D. Kan. 2008) ("A party cannot maintain an action for injunctive relief unless a substantial likelihood of being injured in the future is demonstrated") (citing *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991) and *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)). See also *F.E.R. v. Vladez*, 58 F.3d 1530, 1534 (10th Cir. 1995) ("[t]o establish standing [for injunctive relief] the [plaintiffs] must demonstrate a sufficient likelihood that they will again be harmed in a similar manner."). Plaintiff alleges no facts indicating his mail could again be censored and delayed.

Indeed, the defendants have presented uncontested evidence that plaintiff was no longer within the custody of the Bureau of Prisons when he initiated the action. (Doc. #49-2 at 1). Therefore, plaintiff has failed to demonstrate a substantial likelihood that he will be injured in the future by a delay in turning over his mail. The Court consequently grants summary judgment to defendants on plaintiff's claim against the NCRO for injunctive relief.

## 2. Claims Asserted Against Mr. Racy and Mr. Nalley

Plaintiff states in his Complaint that he sues defendants Mr. Racy and Mr. Nalley in both their individual capacities and their official capacities as BOP officials. The Court therefore discusses below the claims against these defendants by distinguishing between claims asserted against the officials in their official capacities and those asserted against them in their individual capacities.

Official Capacity Claims

A *Bivens* action will not lie against a federal official sued in his official capacity for monetary damages. *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001) (explaining that "an official-capacity suit contradicts the very nature of a Bivens action" and that "[t]here is no such animal as a Bivens suit against a public official tortfeasor in his or her official capacity.") Rather, an action brought against a federal official in his official capacity is considered an action against the United States, and is thus barred by sovereign immunity absent an express Congressional waiver. *Simmat v. United States Bureau of*

*Prisons*, 413 F.3d at 1231. As discussed above, the United States has not waived its sovereign immunity for *Bivens* actions. As plaintiff's claim regarding the censorship and delay of his legal mail qualifies as a *Bivens* claim, it is barred by the doctrine of sovereign immunity insofar as plaintiff attempts to recover against these defendants in their official capacities for monetary damages. Moreover, as discussed above, plaintiff cannot establish a likelihood of future injury and the Court therefore also grants summary judgment to defendants Mr. Racy and Mr. Nalley on any claim for injunctive relief.

Individual Capacity Claims

Moreover, Plaintiff has not alleged sufficient facts to satisfy his burden of proof for a *Bivens* claim brought against the federal officials in their individual capacities. As federal officials, Mr. Racy and Mr. Nalley could be held individually liable for actions taken under color of federal authority that violate plaintiff's constitutional rights. However, to establish *Bivens* liability, it must be demonstrated that the federal officials were directly, personally involved in the constitutional violation. See *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007) ("[D]irect, personal participation [is] required to establish Bivens liability."). Plaintiff failed to set forth any facts indicating that either Mr. Racy or Mr. Nalley directly participated in the censorship or delay of his mail. Indeed, as noted above, plaintiff did not contest the allegations of defendants that Mr. Racy and Mr. Nalley had no knowledge of any mail received by the NCRO and that their job responsibilities did not involve processing inmate mail. (Doc. #49 at 6). Moreover,

plaintiff cannot assert a *Bivens* claim against Mr. Racy and Mr. Nalley based upon their status as superiors without demonstrating that they participated in or at least knew of and acquiesced in the violation of plaintiff's constitutional rights. See *Kite v. Kelley*, 546 F.2d 334, 337-38 (10th Cir. 1976) (finding no viable claim against federal officials based upon their status as the superiors of those who allegedly violated the plaintiff's rights where there was no indication that they had participated in or had actual knowledge of the constitutional violations). Therefore, plaintiff did not allege sufficient facts to raise a genuine issue of material fact on the issue of Mr. Racy and Mr. Nalley's liability. See Fed. R. Civ. P. 56(c).

As plaintiff failed to establish any personal involvement of Mr. Racy or Mr. Nalley, the Court will not discuss the other bases asserted by the government for finding dismissal or summary judgment proper, including the asserted defenses of qualified immunity and collateral estoppel.


C. Allegations Regarding the Hindered Exhaustion of Administrative Remedies

Plaintiff alleged in a "supplemental amendment" to his Complaint that the NCRO prevented him from "successfully filing a lawsuit in federal court because the judge decided" that plaintiff had not exhausted administrative remedies. (Doc. #30). Plaintiff contended that the NCRO "created a sham and artifice" to make it appear the exhaustion requirements had been satisfied. However, plaintiff provided no further factual support for his contention, failing to even provide the Court with information regarding where plaintiff filed this alleged lawsuit. In a memorandum in support of their motion to

dismiss or, in the alternative, for summary judgment, the defendants assumed plaintiff referred to a lawsuit plaintiff filed in the United States District Court for the District of South Dakota on March 4, 2009. As plaintiff did not state otherwise in his response, the Court accepts as true that plaintiff's claim refers to this South Dakota lawsuit. In the Complaint filed with the District Court for the District of South Dakota, Plaintiff alleged that he suffered negligent treatment by Bureau of Prisons officials during an inmate softball game. He sought compensation under the Federal Tort Claims Act (FTCA), but on May 18, 2009, the District Court for the District of South Dakota dismissed his case, finding he had failed to exhaust administrative remedies. (Doc. #49-11 at 2). However, the defendants presented uncontroverted evidence that on August 20, 2009, the District Court granted plaintiff's motion to reconsider and decided plaintiff had exhausted administrative remedies after all. (Doc. #49-12 at 2). The District Court therefore reinstated plaintiff's claim.

The defendants contend plaintiff's claim that the NCRO prevented him from exhausting administrative remedies became moot upon the District Court reinstating his claim on August 20. However, this Court must liberally construe plaintiff's pro se allegations, and must do so in a light most favorable to plaintiff as the non-moving party. As the plaintiff requested in both the Complaint and the Amended Complaint monetary damages for the "violations" and "harm suffered," the Court finds that the District Court's reinstatement of plaintiff's claim did not moot his claim before this Court insofar as plaintiff seeks damages for the harms allegedly caused by the actions of NCRO officials. See *Moseley v. Bd. Of Educ. Of Albuquerque Public Schools*, 483 F.3d 689,

693 (10th Cir. 2007) (citing *Taxpayers for Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.*, 739 F.2d 1472, 1479 (10th Cir. 1984)).

Nonetheless, the Court concludes that plaintiff failed to satisfy his burden to come forward with factual evidence demonstrating that the actions of NCRO officials in any way prevented him from exhausting his administrative remedies. Plaintiff never asserted any actions by NCRO officials that this Court could plausibly construe as even *relating to* plaintiff's alleged inability to exhaust administrative remedies. Plaintiff simply did not allege any acts of NCRO officials taken to prevent plaintiff from exhausting administrative remedies. Therefore, although the Court construes plaintiff's allegations in a light most favorable to plaintiff as the non-moving party, the Court finds plaintiff failed to satisfy his burden to demonstrate "facts showing a genuine issue for trial" on this claim. *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005).[20]


D. Allegations Regarding the Improper Rejection of Plaintiff's Grievance

Plaintiff also contends that the NCRO and the Bureau of Prison's Office of General Counsel in Washington, D.C. improperly rejected a grievance he filed by failing to explain the reason for the rejection and by failing to provide a "notice of receipt" with

---

[20] Defendants additionally presented uncontroverted evidence that the defendants in the South Dakota litigation, including the Bureau of Prisons, had not been served until after the District Court reinstated plaintiff's claim. According to defendants, this establishes that they could not have caused the Court to dismiss plaintiff's claim for failing to exhaust administrative remedies and that plaintiff's claim therefore lacks factual merit. However, as plaintiff did not even specify how the NCRO prevented him from exhausting administrative remedies, the Court instead finds the defendants entitled to summary judgment on the more certain basis that plaintiff did not satisfy his evidentiary burden.

a date and a response time.[21]  Plaintiff contends that the failure to follow the requisite

grievance process constituted a denial of due process, referencing also 42 U.S.C. § 1997

*et. seq.*  (Doc. #1 at 1 and Doc. # 51 at 5).  Specifically, plaintiff stated that Mr. Nalley

had a due process obligation to ensure that grievances were "properly adjudicated," in

order to both ensure appropriate relief at the administrative level and to assist with

subsequent judicial review.  (Doc. #51 at 5).  In support of his proposition that Mr. Nalley

had an obligation to fully adjudicate filed grievances, plaintiff also referred to C.F.R. §

542.[22]  In addition, plaintiff asserted that the Office of General Counsel in Washington

D.C. receives grievances from inmates and that it also has a duty to adjudicate the

grievances, a duty plaintiff alleges it violated.  (Doc. #51 at 5-6).

     Although it is not wholly clear from plaintiff's response to the motion of

defendants  precisely what grievances plaintiff refers to, plaintiff did state in his original

---

[21] Plaintiff appeared to have alleged that both the NCRO and the Washington, D.C. office deprived him of due process in the grievance process.  Plaintiff stated that it is the responsibility of the "Office of Regional Counsel" to properly provide the notification of receipt and a response deadline, but then also asserted that the 'Office of General Counsel" in Washington, D.C. receives grievances from inmates "and has an affirmative duty with respect to that grievance process."  (Doc. #51 at 5).  Plaintiff alleges he made several phone calls to a certain official, speaking with a Barbara Garnett and that he made or received a long distance phone call from "D.C.'s Central Office" regarding the rejection of his filed grievance.

[22] 28 C.F.R. § 542 discusses the Administrative Remedy Program.  § 542.11 sets forth the responsibility of the "Community Corrections Manager (CCM), Warden, Regional Director, and General Counsel" to implement and operate the Administrative Remedy Program.  It provides that they will establish procedures to receive, review, investigate and respond to Administrative Remedy Requests or Appeals submitted by an inmate, acknowledge receipt of a Request or Appeal by returning a receipt to the inmate, conduct an investigation into each request or appeal, and respond to and sign all Requests or Appeals filed at their levels.  Plaintiff, however, merely cited generally to § 542, stating that it placed a burden on the NCRO Director "to fully adjudicate those administrative remedies."  (Doc. #51 at 5).

Complaint that the "Office of General Counsel" acted improperly by refusing to resend to plaintiff a rejection notice and by refusing to explain the rationale for its rejection. Therefore, plaintiff may be asserting that he filed grievances in regards to the censorship and detention of his mail, the only of the above-mentioned allegations contained in the original Complaint. On the other hand, plaintiff attached to his response to defendants' motion letters he wrote to the Bureau of Prisons complaining of the situation with his medical bills as well as a letter purportedly from the Bureau of Prisons denying a "Regional Administrative Remedy Appeal" he filed concerning the medical bills. (Doc. # 51-1 at 57). This letter from the Bureau of Prisons explained that it denied his appeal because the Second Chance Act was complied with in regards to his request for medical treatment. (Doc. #51-1 at 56-57). As with other exhibits offered by plaintiff in opposition to dismissal or summary judgment, these letters were not supported by affidavit or deposition testimony as required under Fed. R. Civ. P. 56(c) and D. Kan. 56.1(d).

The Court concludes that even if plaintiff could properly bring a claim for a due process violation under these circumstances, his allegations are insufficient to survive a motion for summary judgment. Plaintiff simply did not specify the content of his grievance nor did he provide authenticated documentation of the allegedly improper denial, as required by the rules of this Court. Plaintiff's pro se status "does not relieve [plaintiff] of the burden to allege sufficient facts on which a recognized legal claim could be based." *Anderson v. Roberts*, 2008 WL 2098093, at *2 (D. Kan. May 19, 2008) (citing *Fogle v. Pierson*, 435 F.3d 1252, 1263 n. 7 (10th Cir. 2006)).

Moreover, the documents provided by plaintiff demonstrate that, contrary to his assertions, the Bureau of Prisons provided an explanation in the denial of its reasons for denying his grievance. Whether or not the Bureau of Prisons provided plaintiff a notice of its receipt of the grievance has no bearing upon whether it properly "adjudicated" plaintiff's grievance, and plaintiff provides no support for his conclusory allegation that the NCRO and the Office of General Counsel failed to properly adjudicate his grievance. Therefore, the Court finds that plaintiff failed to satisfy his burden to come forward with evidence establishing a genuine issue of material fact on this claim. The defendants are therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

For the foregoing reasons, the Court concludes that summary judgment should be granted in favor of defendants North Central Regional Office, Mr. Van Racy, and Mr. Michael Nalley.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the motion of defendants North Central Regional Office, Mr. Van Racy and Mr. Michael Nalley to dismiss or, in the alternative, for summary judgment (doc. # 48) is granted and plaintiff's claims are dismissed. Therefore, the Court denies as moot plaintiff's motion for a scheduling conference (Doc. #52) and the defendants' motion to delay planning, scheduling and discovery of the case (Doc. #54).

**IT IS SO ORDERED.**

Dated this 21st day of October, 2009, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
